HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
(E-Mail: hilary_potashner@fd.org)
JOHN LITTRELL (Bar No. 221601)
(E-Mail: john_littrell@fd.org)
EMILY J.M. GROENDYKE (Bar. No. 264102)
(E-Mail: emily_groendyke@fd.org)
GARY ROWE (Bar No. 165453)
(E-Mail: gary_rowe@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

RICHARD G. NOVAK (Bar No. 149303)
(E-Mail: richard@rgnlaw.com)
65 N. Raymond Ave., Suite 320
Pasadena, California 91103
Telephone: (626) 578-1175
Facsimile: (626) 685-2562

Attorneys for Defendant
PAUL ANTHONY CIANCIA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **DEATH PENALTY CASE** |
| Plaintiff, | No. CR 13-902-PSG |
| v. | DEFENDANT PAUL ANTHONY CIANCIA'S REPLY IN SUPPORT OF MOTION TO PRECLUDE "PROSECUTION TEAM" FROM OBTAINING FROM THE UNITED STATES BUREAU OF PRISONS DEFENDANT'S WRITTEN, TELEPHONIC AND ELECTRONIC COMMUNICATIONS WITH FAMILY MEMBERS WITHOUT PRIOR JUDICIAL APPROVAL |
| PAUL ANTHONY CIANCIA, | |
| Defendant. | |
| | Hearing Date: May 26, 2015 |
| | Hearing Time: 10:00 a.m. |

Defendant Paul Anthony Ciancia, by and through his counsel of record, hereby files his *Reply in Support of Motion To Preclude "Prosecution Team" From Obtaining From The United States Bureau Of Prisons Defendant's Written, Telephonic And Electronic Communications With Family Members Without Prior Judicial Approval* (hereinafter "the motion").

This *Reply* is based upon the attached memorandum of points and authorities, and any other matters that the Court may consider at the hearing on this motion.

Dated: May 18, 2015               Respectfully submitted,

                                  HILARY POTASHNER
                                  Acting Federal Public Defender

                                  EMILY J.M. GROENDYKE
                                  JOHN LITTRELL
                                  GARY ROWE
                                  Deputy Federal Public Defenders

                                   /s/
                                  RICHARD G. NOVAK
                                  Law Offices of Richard G. Novak

                                  Attorneys for Defendant
                                  PAUL ANTHONY CIANCIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## Introduction

Mr. Ciancia has moved this Court to preclude the prosecution team from having unfettered access to his communications with his immediate family until the Court has reviewed those communications and, after input from Mr. Ciancia and a Filter AUSA, has determined that they are relevant to anticipated defense evidence and otherwise admissible at trial. The government vehemently opposes the motion because it "would result in a radical deviation from the standard practice in prisons across the country—in which these sorts of communications are routinely obtained by prosecutors, admitted at trial and used to convict criminal defendants." (Opposition at 1)

In its zeal to preserve what it refers to as "settled federal practice" (Opposition at 2), but which is nothing more than unchecked prosecutorial misuse of correctional procedures explicitly designed for another purpose, to ensure institutional security, the government significantly mischaracterizes the purpose and effect of the motion. The government argues that the purpose of the motion is to "craft a mitigation case without having to worry that key witnesses could face effective cross-examination." (Opposition at 18)[1] This is simply false.

The purpose of the motion is to ensure that Mr. Ciancia's communications with his family—communications that would not be subject to unlimited monitoring by the prosecution if he were not in custody— are reviewed by the Court *and* deemed relevant to the anticipated testimony of defense witnesses *before* they are made available to the government. Unchecked prosecutorial intrusion into Mr. Ciancia's communications with

---

[1] The government also argues that the purpose of the motion is to permit Mr. Ciancia and his family to have "pleasant" and "convenient" communications. (Opposition at 18.) These arguments really do not warrant much, if any, of a response, since they are not justifications put forth by Mr. Ciancia and certainly make light of the invasion of their privacy that Mr. Ciancia's family has already experienced and that the government seeks to perpetuate.

1

his family *does* burden Mr. Ciancia's rights and privileges because it has a chilling effect on his ability to communicate with his family about his circumstances, to communicate with them about the impact of his actions on them, and to seek their guidance and support. Similarly, unchecked prosecutorial intrusion into these communications creates significant disincentives for a family that has already been scrutinized and traumatized by law enforcement and exposed in the national media, to communicate with their son and sibling while his life hangs in the balance.

If this Court determines at a later point in time, after adversarial proceedings involving Mr. Ciancia's counsel and the Filter AUSA already in place in connection with other materials within the possession of the BOP, that communications preserved by correctional authorities are relevant to and admissible in connection with the anticipated testimony of defense trial witnesses, Mr. Ciancia acknowledges that they should be disclosed to the prosecution team at the appropriate time.

The prosecution team has already disclosed, albeit belatedly, that it is collaborating with the BOP with respect to Mr. Ciancia's communications with his family. Exhibit I to the motion is a June 2014 letter from the prosecution team to the BOP seeking copies of all of Mr. Ciancia's electronic communications. Additionally, it reports, "[s]ince defendant's arrival at the MDC, defendant has not chosen to participate in the MDC's electronic messaging (email) service, nor has defendant made any telephone calls, received incoming mail or sent outgoing mail." (Opposition at 2.) As the government also knows, Mr. Ciancia has not had any face-to-face contact with any family members since November 1, 2013.

While the government argues that Mr. Ciancia's motion is unprecedented, it cannot point to a single case which stands for the proposition that this Court lacks the inherent authority to *temporarily* limit the prosecution team's access to communications between a detained *capital* defendant and his immediate family, until such time as trial decisions by the defendant make those communications relevant and admissible in the eyes of the

Court, after input from the defendant and a "Filter" counsel for the government.

## II.

## The Stipulation Limiting Prosecution Team Access to Otherwise Privileged Statements by Mr. Ciancia Made to Specified BOP Employees Is Directly Relevant to the Reasonableness Of the Remedy Sought Here

The government argues (Opposition at 18-19) that the stipulations and subsequent orders that presently limit the prosecution team's access to information that is within the possession of the BOP, including statements made by Mr. Ciancia, "has no bearing on" the propriety of the protocol proposed in the motion. While this is a fair argument with respect to the stipulation and order that precludes the prosecution team from learning the identity of defense-retained mental-health professionals who may visit Mr. Ciancia at MDC, it is grossly misleading with respect to the stipulation and order that preclude the prosecution team from learning of *any statements* made by Mr. Ciancia to BOP mental-health professionals evaluating his need for special housing within MDC.

More specifically, the latter stipulation and order provides

> the government shall not seek, nor be provided, without the express approval of the defense, any statements made by defendant Paul Anthony Ciancia to Dr. Hope or Dr. Toh of the Federal Bureau of Prisons during the course of any risk assessment being done for the purpose of assessing Mr. Ciancia's suitability to be housed in any particular unit within the MDC-LA.

(Doc. No. 42.) While the government is correct that it did not stipulate that Mr. Ciancia's communications with BOP mental-health professionals are "privileged," it did not claim that it needs unfettered access to these statements in order to increase the chance of obtaining a conviction and

3

sentence of death, the argument pressed here. Of course, statements made by Mr. Ciancia to mental-health professionals about his mental condition outside of a correctional context would be privileged.

This stipulation and order has nothing to do with honoring or "effectuat[ing] the provisions of" Rule 12.2, as the government claims. (Opposition at 19.) It is to facilitate communication between Mr. Ciancia and individuals who have responsibility for his welfare. His immediate family has the same interests and responsibilities: to inquire of him concerning his welfare, to provide him with emotional support, and to be available to speak with him, without the risk of unfettered disclosure, about his state of mind.

The stipulation and order does not limit the embargo on disclosure of statements made by Mr. Ciancia to those that relate directly to his need for special housing. It covers "any statements" made by Mr. Ciancia during the course of a risk assessment, no matter how probative they are of his guilt or consistent with the government's view of why he should be executed. (Doc No. 42.)

### III.
**It Is the Justification For, Rather Than the Fact of, BOP Monitoring and Recording of Inmate Communications That Counsels for Judicial Control Over Prosecution Team Access to Mr. Ciancia's Communications with His Immediate Family**

The government sarcastically observes that Mr. Ciancia "spends over six pages reciting and recognizing the BOP's ability and authority to monitor and record an inmate's communications," an assertion with which "[t]he government agrees." (Opposition at 3.) However, it appears that the government either misunderstands or intentionally misconstrues the significance of that presentation, for it then suggests that Mr. Ciancia claims that "the potential penalty in this case places defendant beyond the reach of the well-settled case law that the BOP may monitor and record an inmate's communications and produce same to prosecution." (Opposition at 3.) It is true that

there is well settled law that the BOP may monitor and record inmate communications. There is no case law that precludes this Court from imposing a Filter AUSA on the government's access to those communications until such time as the government can establish that the communications are relevant to rebut some claim of the defense. To the contrary, case law establishes that when *correctional* authorities collect inmate communications at the request of *prosecutorial* authorities, an inmate's rights under the Fourth Amendment are implicated.

In fact, former Attorney General Mukasey wrote, while sitting as a United States District Judge, that "[n]o case," "holds that . . . . a review of a prisoner's non-legal mail[] may be put in place at the instance of government investigators in order to gather evidence and for reasons having nothing to do with prison security." *United States v. Heatley*, 41 F.Supp.2d 884, 292 (S.D.N.Y. 1999). Indeed, Judge Mukasey rejected as unsupported and unduly "bold" the government's claim that the defendant "had no reasonable expectation of privacy in his non-legal mail and therefore has no Fourth Amendment right to defend here. . . . " *Id.* at 289.

Mr. Ciancia does not claim that because he faces the death penalty the BOP may not monitor and record his communications, nor does he claim that the prosecution team shall never have access to them. He claims that before the BOP may provide these communications to the prosecution team, this Court should review them, receive input from Mr. Ciancia and a Filter AUSA, and only then decide whether they are relevant and otherwise admissible to rebut defense evidence at trial, precisely because the prospect of unfettered access to these communications unreasonably burdens Mr. Ciancia's constitutionally protected and privileged communications, as well as his rights and counsel's duties under the Sixth Amendment.

The federal regulations and BOP protocols addressed at length in Mr. Ciancia's motion are important because they show that the purpose behind monitoring and recording inmate communications is to protect institutional security and *not* to generate

5

information concerning a defendant's relationships to be used affirmatively in a capital prosecution. What the government refers to as "standard practice" merely means that the government has used, without any judicial oversight, statements by defendants that are collected for the purpose of ensuring institutional security, in order to obtain convictions.[2] The government's opposition to Mr. Ciancia's measured proposal belies its desire to both discourage family communications and, if there are any, to use them to affirmatively enhance its ability to execute Mr. Ciancia.

### IV.

### Mr. Ciancia's Communications with Immediate Family Members About Matters Bearing on His Capital Prosecution Are Protected by, and Are Necessary to Fulfill, His Rights Under the Sixth Amendment

The government narrowly construes, or misunderstands, the impact of its "standard practice" on Mr. Ciancia's rights under the Sixth Amendment. For example, it cites *Maine v. Moulton* for the proposition that there is no Sixth Amendment violation if "by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." (Opposition at 17 (quoting *Maine v. Moulton* 474 U.S. 159, 176 (1985))) However, it is not by luck or happenstance that the government may come upon statements by Mr. Ciancia. To the contrary, it is through specific efforts to obtain those statements from correctional authorities recording them pursuant to federal regulations and government protocols established for a different purpose—ensuring institutional security.

---

[2] The government suggests that Mr. Ciancia's alleged offenses requires greater intrusions into his communications than would be necessary with other inmates. (Opposition at 4) Mr. Ciancia does not suggest that the BOP should not be monitoring or recording his conversations, nor does he suggest that *if* the BOP determines that Mr. Ciancia's communications do require a referral to prosecutorial authorities for investigation of additional crimes, that the BOP would not have a mechanism to do so. That is one of the purposes of the proposed Filter AUSA, to act as a point of contact within the United States Attorney's Office if such a need arises.

Moreover, the government clearly does not understand that it is the defense's development and presentation of mitigation evidence, including evidence of a defendant's connection with his family, which is central to the defendant's rights under the Sixth Amendment. Mr. Ciancia's motion sets forth, at pages 12-13, well established authority that counsel's failure to develop and present evidence of a defendant's relationship with this family violates his rights to effective assistance of counsel. Government actions that prevent the development and presentation of that evidence, as here, constitute the same harm through different actors.

The government's production of "voluminous discovery detailing defendant's background" is not a substitute for or a fulfillment of counsel's duty to develop and present mitigation evidence. It is notable that the government reports, in its Opposition, its numerous interviews with "friends, teachers, roommates and potential employers," but it does not mention its numerous interviews with Mr. Ciancia's immediate family members immediately after his arrest.

Having conducted those interviews on its own terms and without any judicial intervention, the government now seeks to preclude these same family members from having any confidential written, telephonic or electronic communications (even on an interim basis) with Mr. Ciancia.

## V.

### Notwithstanding the Government's Mantra That There Is No Parent-Child Privilege, It Does Exist and It Is Appropriately Applied in this Context

As if Judge Whaley's decision in *In re Grand Jury Proceedings, Unemancipated Minor Child*, 949 F. Supp. 1487 (E.D. Wash. 1996), cited at length in the motion, was an apparition, the government argues that there is no such thing in the common law as a parent-child privilege. While Judge Whaley decided that there is no constitutional basis for the privilege, he clearly held that there is a common law basis and sound reason for

7

such a privilege, which should be applied on a case-by-case basis. "Hence, the Court concludes that reason and experience, as well as the public interest, are best served by the recognition of some form of a parent-child privilege." *Id.* at 1497. This decision has stood for almost 20 years, and the Ninth Circuit has not had cause to question it or disapprove of it. While the government cites to *United States v. Penn* to argue that no such privilege exists, Judge Whaley explained that *Penn* was about due process, not privilege. *Id.* At 1496 (emphasis added).

The measures suggested in the instant motion balance all of the interests acknowledged by Judge Whaley with the government's legitimate right to effective cross-examination of defense witnesses. It cannot be said that there is no such privilege; the question is whether it should be applied, at least temporarily, in this case under these facts.

The defendant is a very young adult, who has never been detained for any offense in his life, let alone a capital homicide. He has no prior experience with the criminal-justice system. He is thousands of miles from his family. His law-abiding family has been scrutinized by law enforcement in a manner they never could have imagined. The defendant's connectedness with his family *is* a mitigating factor. To the extent that the government's continuing monitoring of their communications interferes with that relationship, the remedies sought here strike a proper balance, a balance that this Court can achieve through exercise of its inherent authority to control these proceedings.

## VI

**This Court Has Inherent Authority to Control The Scope and Timing of the BOP's Disclosures of Mr. Ciancia's Communications With His Family**

Rule 57(b) of the Federal Rules of Criminal Procedure provides that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed. R. Crim. Proc. 57(b). "It is undisputed that district courts

have the authority to 'prescribe rules for the conduct of their business' in any manner not inconsistent with the federal rules or Acts of Congress." *United States v. Warren*, 601 F.2d 471, 473 (9th Cir. 1979) (quoting *Hicks v. Bekins Moving & Storage*, 115 F.2d 406 (9th Cir. 1940)).

The Ninth Circuit recently stated:

> Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties." *In re Peterson*, 253 U.S. 300, 312, 64 L. Ed. 919, 40 S. Ct. 543 (1920). The power acknowledged by the Court in *Peterson* has been described as the authority to take actions "necessary only in the practical sense of being useful." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 563 (3d Cir. 1985) (*en banc*). This inherent authority has been acknowledged explicitly by Congress in Federal Rule of Criminal Procedure 57(b), among other provisions. Rule 57(b) gives district courts power to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."

*United States v. Ray*, 375 F.3d 980, 993 (9th Cir. 2004).

Importantly, Rule 57(b) has been interpreted to permit the district court to regulate discovery and pre-trial disclosures in capital prosecutions. "[T]he trial court retains discretion to regulate discovery in the interests of justice, administrative efficiency, and the protection of the public. *See* Fed. R. Crim. P. 16(d)(1) ('At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.'); Fed. R. Crim. P. 57(b) ('A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.')." *United States v. Taveras*, 436 F. Supp. 2d 493, 507 (E.D.N.Y. 2006).

9

While the government argues that its unrestricted access to Mr. Ciancia's communications with his immediate family does not violate his rights under the Constitution or his privileges, it does not assert that federal law or rules of court preclude this Court from establishing the protocol suggested in the motion. What the government refers to as "standard practice in prisons" and "settled federal practice" is nothing more than an exercise of executive-branch power wholly outside of federal law or rules governing these proceedings. DOJ practices do not constitute law or rules within the meaning of Rule 57(b).

## VII.

## Conclusion

For all of these reasons, this Court should:

1)   order the United States Bureau of Prisons not to provide to the prosecution team in this matter any information obtained from, or copies or recordings of, written, telephonic or electronic communications between Mr. Ciancia and members of his family absent a specific judicial order as to specific communications issued only after Mr. Ciancia has an opportunity to be heard;

2)   order the prosecution team in this matter not to seek to obtain through an informal request, a subpoena, a search warrant or any other means, any information concerning Mr. Ciancia's written, telephonic or electronic communications with family members, absent further order of this Court; and

3)   order the United States Bureau of Prisons to communicate only with the "filter AUSA" established by this Court in its previous order concerning any and all issues related to Mr. Ciancia's written, telephonic or electronic communications with his family.

Dated: May 18, 2015

Respectfully submitted,

HILARY POTASHNER  
Acting Federal Public Defender

EMILY J.M. GROENDYKE  
JOHN LITTRELL  
GARY ROWE  
Deputy Federal Public Defenders

  /s/  
RICHARD G. NOVAK  
Law Offices of Richard G. Novak

Attorneys for Defendant  
PAUL ANTHONY CIANCIA