EILEEN M. DECKER
United States Attorney
PATRICK R. FITZGERALD (Cal. Bar No. 135512)
First Assistant United States Attorney
MELISSA MILLS (Cal. Bar No. 248529)
Assistant United States Attorney
Terrorism and Export Crimes Section
JOANNA M. CURTIS (Cal. Bar No. 203151)
Assistant United States Attorney
Violent and Organized Crime Section
MICHAEL S. WARBEL (Ohio State Bar No. 0074369)
Trial Attorney, U.S. Department of Justice
1200/1300/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:    (213) 894-4591/0627/0298
Facsimile:    (213) 894-6436
E-mail:    Patrick.Fitzgerald@usdoj.gov
           Melissa.Mills@usdoj.gov
           Joanna.Curtis@usdoj.gov
           Michael.Warbel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-902-PSG |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT PAUL ANTHONY CIANCIA |
| v. | |
| PAUL ANTHONY CIANCIA, | |
| Defendant. | |

1.   This constitutes the plea agreement between PAUL ANTHONY
CIANCIA ("defendant") and the United States Attorney's Office for the
Central District of California (the "USAO") in the above-captioned
case.  This agreement is limited to the USAO and cannot bind any
other federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

1                          DEFENDANT'S OBLIGATIONS

2        2.   Defendant agrees to:

3             a.   At the earliest opportunity requested by the USAO and

4   provided by the Court, appear and plead guilty to Counts One through

5   Eleven of the Indictment in United States v. Paul Anthony Ciancia,

6   CR No. 13-902-PSG, which charge defendant with Murder of a Federal

7   Officer, in violation of 18 U.S.C. §§ 1114(1), 1111; Attempted Murder

8   of a Federal Officer, in violation of 18 U.S.C. §§ 1114(3), 1113;

9   Violence at International Airports, in violation of 18 U.S.C.

10  § 37(a)(1); Discharge of a Firearm During a Crime of Violence Causing

11  Death, in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii); and

12  Discharge of a Firearm During a Crime of Violence, in violation of

13  18 U.S.C. § 924(c)(1)(A)(iii).

14            b.   Not contest facts agreed to in this agreement.

15            c.   Abide by all agreements regarding sentencing contained

16  in this agreement.

17            d.   Appear for all court appearances, surrender as ordered

18  for service of sentence, obey all conditions of any bond, and obey

19  any other ongoing court order in this matter.

20            e.   Not commit any crime; however, offenses that would be

21  excluded for sentencing purposes under United States Sentencing

22  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

23  within the scope of this agreement.

24            f.   Be truthful at all times with Pretrial Services, the

25  United States Probation Office, and the Court.

26            g.   Pay the applicable special assessments at or before

27  the time of sentencing unless defendant lacks the ability to pay and

28

                                    2

1  prior to sentencing submits a completed financial statement on a form
2  to be provided by the USAO.

3      3.   Defendant further agrees:

4          a.   To forfeit all right, title, and interest in:  a Smith
5  & Wesson 5.56 millimeter M&P15 semiautomatic rifle, serial number
6  SR75350; eight magazines compatible with the Smith & Wesson M&P15
7  rifle; 481 rounds of Lake City Army Ammunition Plant 5.56 caliber
8  ammunition; a Glock Model 19 pistol, serial number ESW2G1US; a Para
9  Ordnance Model P13 pistol, serial number RN2399; a Glock magazine
10 loaded with ammunition; a Para Ordnance magazine loaded with
11 ammunition; and three plastic bags containing ammunition, in the
12 possession of the Federal Bureau of Investigation.

13         b.   To the Court's entry of an order of forfeiture at or
14 before sentencing with respect to these assets and to the forfeiture
15 of the assets.

16         c.   To take whatever steps are necessary to pass to the
17 United States clear title to the assets described above, including,
18 without limitation, the execution of a consent decree of forfeiture
19 and the completing of any other legal documents required for the
20 transfer of title to the United States.

21         d.   Not to contest any administrative forfeiture
22 proceedings or civil judicial proceedings commenced against these
23 properties pursuant to Title 18, United States Code, Section
24 924(d)(1) and Title 28, United States Code, Section 2461(c).  With
25 respect to any criminal forfeiture ordered as a result of this plea
26 agreement, defendant waives the requirements of Federal Rules of
27 Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture
28 in the charging instrument, announcements of the forfeiture

3

1   sentencing, and incorporation of the forfeiture in the judgment.

2   Defendant acknowledges that forfeiture of the assets is part of the

3   sentence that may be imposed in this case and waives any failure by

4   the Court to advise defendant of this, pursuant to Federal Rule of

5   Criminal Procedure 11(b)(1)(J), at the time the Court accepts

6   defendant's guilty pleas.

7          e.   Not to assist any other individual in any effort

8   falsely to contest the forfeiture of the assets described above.

9          f.   Not to claim that reasonable cause to seize the assets

10   was lacking.

11          g.   To prevent the transfer, sale, destruction, or loss of

12   any and all assets described above to the extent defendant has the

13   ability to do so.

14          h.   To fill out and deliver to the USAO a completed

15   financial statement listing defendant's assets on a form provided by

16   the USAO.

17          i.   That forfeiture of assets described above shall not be

18   counted toward satisfaction of any special assessment, fine,

19   restitution, costs, or other penalty the Court may impose.

20                           THE USAO'S OBLIGATIONS

21        4.   The USAO agrees to:

22          a.   Not contest facts agreed to in this agreement.

23          b.   Abide by all agreements regarding sentencing contained

24   in this agreement.

25          c.   At the time of sentencing, move to dismiss its notice

26   of intent to seek the death penalty and not seek the death penalty

27   against defendant.

28

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSES</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in Count One of the Indictment, that is, Murder of a Federal Officer, in violation of 18 U.S.C. §§ 1114(1), 1111, the following must be true:

a.   Defendant unlawfully killed a person (in this case, Transportation Security Administration ("TSA") Officer Gerardo Hernandez);

b.   Defendant killed Officer Hernandez with malice aforethought, which means to kill either deliberately and intentionally or recklessly with extreme disregard for human life;

c.   The killing was premeditated, which means with planning or deliberation.  The amount of time needed for premeditation of a killing depends on the person and the circumstances.  It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered the killing;

d.   Officer Hernandez was a federal officer or employee; and

e.   The killing occurred while Officer Hernandez was engaged in or on account of the performance of official duties.

5

6.     Defendant understands that for defendant to be guilty of the crimes charged in Counts Two and Three of the Indictment, that is, Attempted Murder of a Federal Officer, in violation of 18 U.S.C. §§ 1114(3), 1113, the following must be true:

a.     Defendant did something that was a substantial step toward unlawfully killing a person (in this case, TSA Officers Tony Leroy Grigsby and James Maurice Speer);

b.     When defendant took that substantial step, defendant intended to kill Officers Grigsby and Speer;

c.     Officers Grigsby and Speer were federal officers or employees; and

d.     The attempted killings occurred while Officers Grigsby and Speer were engaged in, or on account of, the performance of official duties.

7.     Defendant understands that for defendant to be guilty of the crimes charged in Counts Four through Seven of the Indictment, that is, Violence at International Airports, in violation of 18 U.S.C. § 37(a)(1), the following must be true:

a.     Defendant unlawfully and intentionally used, or attempted or conspired to use, a device, substance or weapon to perform an act of violence against a person at an airport;

b.     The airport served international civil aviation;

c.     The act caused or was likely to cause serious bodily injury or death;

d.     The act endangered or was likely to endanger safety at that airport; and

e.     The act took place in the United States.

6

8.     Defendant understands that for defendant to be guilty of the crime charged in Count Eight of the Indictment, that is, Discharge of a Firearm During a Crime of Violence Causing Death, in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii), the following must be true:

a.     Defendant committed the crime of Murder of a Federal Officer, as charged in Count One of the Indictment, which killing was a murder, or Violence at International Airports, as charged in Count Four of the Indictment, which are crimes of violence that may be prosecuted in a court of the United States;

b.     Defendant knowingly used a firearm during and in relation to those crimes;

c.     Defendant's actions caused the death of a person (in this case, TSA Officer Gerardo Hernandez); and

d.     The killing was a murder, that is, the unlawful killing of another human being with malice aforethought.

9.     Defendant understands that for defendant to be guilty of the crimes charged in Counts Nine through Eleven of the Indictment, that is, Discharge of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), the following must be true:

a.     Defendant committed crimes of violence, namely, Attempted Murder of a Federal Officer or Violence at International Airports, for which he may be prosecuted in a court of the United States; and

b.     Defendant did knowingly carry, brandish, discharge, or use a firearm during or in relation to a crime of violence.

10.   Defendant understands that to be subject to the statutory maximum sentence set forth below for Count Four, which charges violation of Title 18, United States Code, Section 37(a)(1) resulting in death, the government must prove beyond a reasonable doubt that the death of a person resulted from defendant's conduct prohibited by Section 37(a).  Defendant admits that, in fact, a death resulted from his conduct prohibited by Section 37(a).

11.   Defendant understands that to be subject to the statutory minimum sentence set forth below for Count Nine, which charges a violation of 18 U.S.C. § 924(c), the government must prove beyond a reasonable doubt that defendant discharged a firearm during or in relation to a crime of violence.  Defendant admits that defendant, in fact, discharged a firearm as described in Count Nine of the Indictment.

### PENALTIES AND RESTITUTION

12.   Given the government's withdrawal of its notice of intent to seek the death penalty, defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1114(1) and 1111 is:  imprisonment for life; a lifetime term of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Sections 1114(3) and 1113, is:  20 years' imprisonment; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.   Given the government's withdrawal of its notice of intent to seek the death penalty, defendant understands that the statutory maximum sentence the Court can impose for a violation of Title 18, United States Code, Section 37(a)(1), resulting in death, is: imprisonment for life; a lifetime term of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 37(a)(1) not resulting in death, is:  20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

16.   Given the government's withdrawal of its notice of intent to seek the death penalty, defendant understands that the statutory maximum sentence the Court can impose for a violation of Title 18, United States Code, Sections 924(j)(1) and 924(c)(1)(A)(iii), is: imprisonment for life; a lifetime term of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

17.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), is:  imprisonment for life, a five-year period of supervised release; a fine of $250,000, or twice the

gross gain or gross loss resulting from the offense, whichever is
greatest; and a mandatory special assessment of $100.

18.   Defendant understands that the statutory mandatory minimum
sentence that the Court must impose for a violation of Title 18,
United States Code, Sections 1114(1) and 1111, as charged in Count
One of the Indictment, is imprisonment for life, and a mandatory
special assessment of $100.

19.   Defendant understands that the statutory mandatory minimum
sentence that the Court must impose for the first violation of Title
18, United States Code, Section 924(c), as charged in Count Nine of
the Indictment, is a ten-year term of imprisonment, if the firearm
was discharged, which must run consecutive to any other sentence of
imprisonment, and a mandatory special assessment of $100.

20.   Defendant further understands that the statutory mandatory
minimum sentence that the Court must impose for each additional
violation of Title 18, United States Code, Section 924(c), as charged
in Counts Ten and Eleven of the Indictment, is a 25-year term of
imprisonment, each of which must run consecutive to any other
sentence of imprisonment, and a mandatory special assessment of $100.

21.   Defendant understands, therefore, that the total maximum
sentence for all offenses to which defendant is pleading guilty is:
imprisonment for life, as to Counts One, Four, Eight, Nine, Ten, and
Eleven, which the Court may run consecutively; 100 years'
imprisonment as to Counts Two, Three, Five, Six, and Seven, which the
Court may run consecutively; a lifetime period of supervised release;
a fine of $2,750,000 or twice the gross gain or gross loss resulting
from the offenses, whichever is greatest; and a mandatory special
assessment of $1,100.

22.  Defendant understands, therefore, that the total statutory mandatory minimum sentence that the Court must impose for all offenses to which defendant is pleading guilty is:  imprisonment for life, plus 60 years' imprisonment, and a mandatory special assessment of $1,100.

23.  Pursuant to Title 18, United States Code, Section 3663A, defendant understands that defendant will be required to pay full restitution to the victims, as defined by Title 18, United States Code, Section 3663A(a)(2), for the offenses to which defendant is pleading guilty.  Restitution shall include: (a) an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment; (b) an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; (c) reimbursement for income lost by victims as a result of offenses committed by defendant; and (d) reimbursement for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution or attendance at proceedings related to the offenses.  With respect to Counts One, Four, and Eight, defendant shall pay an amount equal to the cost of necessary funeral and related services.

24.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part

11

1   of the term of supervised release authorized by statute for the

2   offense that resulted in the term of supervised release.

3        25.   Defendant understands that, by pleading guilty, defendant

4   may be giving up valuable government benefits and valuable civic

5   rights, such as the right to vote, the right to possess a firearm,

6   the right to hold office, and the right to serve on a jury.

7   Defendant understands that once the court accepts defendant's guilty

8   pleas, it will be a federal felony for defendant to possess a firearm

9   or ammunition.   Defendant understands that the convictions in this

10  case may also subject defendant to various other collateral

11  consequences, including but not limited to revocation of probation,

12  parole, or supervised release in another case and suspension or

13  revocation of a professional license.   Defendant understands that

14  unanticipated collateral consequences will not serve as grounds to

15  withdraw defendant's guilty plea.

16       26.   Defendant understands that, if defendant is not a United

17  States citizen, the felony convictions in this case may subject

18  defendant to:   removal, also known as deportation, which may, under

19  some circumstances, be mandatory; denial of citizenship; and denial

20  of admission to the United States in the future.   The court cannot,

21  and defendant's attorney also may not be able to, advise defendant

22  fully regarding the immigration consequences of the felony conviction

23  in this case.   Defendant understands that unexpected immigration

24  consequences will not serve as grounds to withdraw defendant's guilty

25  pleas.

26                               FACTUAL BASIS

27       27.   Defendant admits that defendant is, in fact, guilty of the

28  offenses to which defendant is agreeing to plead guilty.   Defendant

12

1  and the USAO agree to the statement of facts provided in the Factual
2  Basis Appendix and agree that this statement of facts is sufficient
3  to support pleas of guilty to the charges described in this agreement
4  and to establish the Sentencing Guidelines factors set forth in
5  paragraph 29 below, but is not meant to be a complete recitation of
6  all facts relevant to the underlying criminal conduct or all facts
7  known to either party that relate to that conduct.

8                          SENTENCING FACTORS

9       28.  Defendant understands that in determining defendant's
10 sentence the Court is required to calculate the applicable Sentencing
11 Guidelines range and to consider that range, possible departures
12 under the Sentencing Guidelines, and the other sentencing factors set
13 forth in 18 U.S.C. § 3553(a).  Defendant understands that the
14 Sentencing Guidelines are advisory only, that defendant cannot have
15 any expectation of receiving a sentence within the calculated
16 Sentencing Guidelines range, and that after considering the
17 Sentencing Guidelines and the other § 3553(a) factors, the Court will
18 be free to exercise its discretion to impose any sentence it finds
19 appropriate between any mandatory minimum and up to the maximum set
20 by statute for any of the crimes of conviction.

21      29.  Defendant and the USAO agree to the following applicable
22 Sentencing Guidelines factors:

23

24 18 U.S.C. §§ 1114(1), 1111 (Count One)

25   Base Offense Level:            43            [U.S.S.G. §2A1.1]

26

27 18 U.S.C. §§ 1114(3), 1113 (Counts Two & Three)

28

                                  13

| Base Offense Level: | 33 | [U.S.S.G. §2A2.1] |
| Specific Offense Characteristics | +4 | [U.S.S.G. §2A2.1(b)(1)] |

18 U.S.C. § 37(a)(1) (Count Four)

| Base Offense Level: | 43 | [U.S.S.G. §2A1.1] |

18 U.S.C. § 37(a)(1) (Counts Five & Six)

| Base Offense Level: | 33 | [U.S.S.G. §2A2.1] |
| Specific Offense Characteristics | +4 | [U.S.S.G. §2S2.1(b)(1)] |

18 U.S.C. § 37(a)(1) (Count Seven)

| Base Offense Level: | 14 | [U.S.S.G. §2A2.2] |
| Specific Offense Characteristics | +2 | [U.S.S.G. §2A2.2(b)(1)] |
| | +5 | [U.S.S.G. §2A2.2(b)(2)(A) |
| | +7 | [U.S.S.G. §2A2.2(b)(3)(C)] |
| Cap for Special Characteristics | +10 | [U.S.S.G. §2A2.2(b)(3)] |

18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii) (Count Eight)

| Base Offense Level: | 43 | [U.S.S.G. §2A1.1] |

Combined Guideline Calculation

| Base Offense Level: | 43 | [U.S.S.G. §2A1.1] |
| "Grouping Adjustment:" | +2 | [U.S.S.G. §3D1.4] |
| Acceptance of Responsibility: | -3 | [U.S.S.G §3E1.1(b)] |
| **Total Offense Level:** | **42** | |

30.  Additionally, the government reserves the right to argue that an upward departure is appropriate pursuant to U.S.S.G. § 2A2.1, comment 2; defendant reserves the right to oppose this departure.

31.  Except as set forth in paragraphs 4(d) and 30, above, defendant and the USAO otherwise agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant was to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.  Defendant understands, as stated above, that the Court must sentence defendant to a term of imprisonment for life on Count One.  Defendant further understands, as stated above, that the Court must sentence defendant to a term of ten years' imprisonment on Count Nine, 25 years' imprisonment on Count Ten, and 25 years' imprisonment on Count Eleven, all of which must run consecutive to any term of imprisonment imposed for Counts One through Eight.

32.  The USAO and defendant agree that defendant is in Criminal History Category I.

33.  Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the relevant Sentencing Guidelines effective on November 1, 2013 represent a reasonable basis for the Court to determine defendant's sentence in this case, and that defendant should be sentenced in accordance with the Sentencing Guidelines and the applicable mandatory minimum sentences. Therefore, subject to paragraph 45 below, defendant and the USAO agree not to argue, either orally or in writing, that the Court

15

1  (a) not follow the Sentencing Guidelines in imposing sentence;

2  (b) impose a sentence not in accordance with the Sentencing

3  Guidelines; or (c) impose a term of imprisonment outside the

4  sentencing range corresponding to the determined offense level.

5                    WAIVER OF CONSTITUTIONAL RIGHTS

6        34.  Defendant understands that by pleading guilty, defendant

7  gives up the following rights:

8             a.   The right to persist in a plea of not guilty.

9             b.   The right to a speedy and public trial by jury.

10            c.   The right to be represented by counsel -- and if

11  necessary have the Court appoint counsel -- at trial.  Defendant

12  understands, however, that, defendant retains the right to be

13  represented by counsel -- and if necessary have the Court appoint

14  counsel -- at every other stage of the proceeding.

15            d.   The right to be presumed innocent and to have the

16  burden of proof placed on the government to prove defendant guilty

17  beyond a reasonable doubt.

18            e.   The right to confront and cross-examine witnesses

19  against defendant.

20            f.   The right to testify and to present evidence in

21  opposition to the charges, including the right to compel the

22  attendance of witnesses to testify.

23            g.   The right not to be compelled to testify, and, if

24  defendant chose not to testify or present evidence, to have that

25  choice not be used against defendant.

26            h.   Any and all rights to pursue any affirmative defenses,

27  Fourth Amendment or Fifth Amendment claims, and other pretrial

28  motions that have been filed or could be filed.

1                    i.    The right to request DNA testing, including DNA
2    testing on the following items:
3                         i.    Smith & Wesson M&P15 rifle, bearing serial number
4    SR78750;
5                         ii.   481 rounds of American Eagle XM855 ammunition,
6    manufactured by Lake City Army Ammunition Plant;
7                         iii. Eight magazines, compatible with the Smith &
8    Wesson M&P15 rifle;
9                         iv.   19 spent casings found at Los Angeles
10   International Airport ("LAX");
11                        v.    Items of luggage found at LAX; and
12                        vi.   Defendant's two-page handwritten note found in
13   luggage.
14       35.   Defendant understands that the government does not intend
15   to conduct DNA testing, or any further testing, of any of these
16   items.  Defendant understands: (a) before entering guilty pleas
17   pursuant to this agreement, defendant could request DNA testing of
18   evidence in this case; and (b) with respect to the offenses to which
19   defendant is pleading guilty pursuant to this agreement, defendant
20   would have the right to request DNA testing of evidence after
21   conviction under the conditions specified in 18 U.S.C. § 3600.
22   Knowing and understanding defendant's right to request DNA testing,
23   and acknowledging that the USAO has offered to perform any required
24   DNA testing, defendant voluntarily gives up that right with respect
25   to both the specific items listed above and any other items of
26   evidence there may be in this case that might be subject to DNA
27   testing.  Defendant understands that by giving up this right:
28   (a) defendant is giving up any ability to request DNA testing of

17

1   evidence in this case in the current proceeding, in any proceeding
2   after conviction under 18 U.S.C. § 3600, and in any other proceeding
3   of any type; and (b) defendant will never have another opportunity to
4   have the evidence in this case, whether or not listed above,
5   submitted for DNA testing, and will never have an opportunity to
6   employ the results of DNA testing to support a claim that defendant
7   is innocent of the offenses to which defendant is pleading guilty.

8                    WAIVER OF APPEAL OF CONVICTION

9        36.   Defendant understands that, with the exception of an appeal
10  based on a claim that defendant's guilty pleas were involuntary, by
11  pleading guilty defendant is waiving and giving up any right to
12  appeal defendant's convictions on the offenses to which defendant is
13  pleading guilty.

14            WAIVER OF APPEAL AND COLLATERRAL ATTACK

15       37.   Defendant gives up the right to appeal all of the
16  following: (a) the procedures and calculations used to determine and
17  impose any portion of the sentence; (b) the term of imprisonment
18  imposed by the Court, provided it is within the statutory maximum;
19  (c) the fine imposed by the Court, provided it is within the
20  statutory maximum; (d) the term of probation or supervised release
21  imposed by the Court, provided it is within the statutory maximum;
22  and (e) any of the following conditions of probation or supervised
23  release imposed by the Court: the conditions set forth in General
24  Orders 318, 01-05, and/or 05-02 of this Court; the drug testing
25  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
26  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).
27       38.   Defendant also gives up any right to bring a post-
28  conviction collateral attack on the convictions or sentence,

                              18

1   including any order of restitution, except a post-conviction

2   collateral attack based on a claim of ineffective assistance of

3   counsel, a claim of newly discovered evidence, or an explicitly

4   retroactive change in the applicable Sentencing Guidelines,

5   sentencing statutes, or statutes of conviction.

6       39.   This agreement does not affect in any way the right of the

7   USAO to appeal the sentence imposed by the Court.

8                  RESULT OF WITHDRAWAL OF GUILTY PLEA

9       40.   Defendant agrees that if, after entering guilty pleas

10  pursuant to this agreement, defendant seeks to withdraw and succeeds

11  in withdrawing defendant's guilty pleas on any basis other than a

12  claim and finding that entry into this plea agreement was

13  involuntary, then (a) the USAO will be relieved of all of its

14  obligations under this agreement; and (b) should the USAO choose to

15  pursue any charge or notice of intended punishment that was either

16  dismissed or not filed as a result of this agreement, then (i) any

17  applicable statute of limitations will be tolled between the date of

18  defendant's signing of this agreement and the filing commencing any

19  such action; and (ii) defendant waives and gives up all defenses

20  based on the statute of limitations, any claim of pre-indictment

21  delay, or any speedy trial claim with respect to any such action or

22  notice, except to the extent that such defenses existed as of the

23  date of defendant's signing this agreement.

24                  EFFECTIVE DATE OF AGREEMENT

25      41.   This agreement is effective upon signature and execution of

26  all required certifications by defendant, defendant's counsel, and an

27  Assistant United States Attorney.

28

## BREACH OF AGREEMENT

42.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

43.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or notice of intended punishment that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

20

1     c.    Defendant agrees that: (i) any statements made by
2   defendant, under oath, at the guilty plea hearing (if such a hearing
3   occurred prior to the breach); (ii) the agreed to factual basis
4   statement in this agreement; and (iii) any evidence derived from such
5   statements, shall be admissible against defendant in any such action
6   against defendant, and defendant waives and gives up any claim under
7   the United States Constitution, any statute, Rule 410 of the Federal
8   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
9   Procedure, or any other federal rule, that the statements or any
10  evidence derived from the statements should be suppressed or are
11  inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

13     44.   Defendant understands that the Court and the United States
14  Probation Office are not parties to this agreement and need not
15  accept any of the USAO's sentencing recommendations or the parties'
16  agreements to facts or sentencing factors.

17     45.   Defendant understands that both defendant and the USAO are
18  free to: (a) supplement the facts by supplying relevant information
19  to the United States Probation Office and the Court, (b) correct any
20  and all factual misstatements relating to the Court's Sentencing
21  Guidelines calculations and determination of sentence, and (c) argue
22  on appeal and collateral review that the Court's Sentencing
23  Guidelines calculations and the sentence it chooses to impose are not
24  error, although each party agrees to maintain its view that the
25  calculations in paragraph 29 are consistent with the facts of this
26  case.  While this paragraph permits both the USAO and defendant to
27  submit full and complete factual information to the United States
28  Probation Office and the Court, even if that factual information may

1  be viewed as inconsistent with the facts agreed to in this agreement,
2  this paragraph does not affect defendant's and the USAO's obligations
3  not to contest the facts agreed to in this agreement.

4      46.  Defendant understands that even if the Court ignores any
5  sentencing recommendation, finds facts or reaches conclusions
6  different from those agreed to, and/or imposes any sentence up to the
7  maximum established by statute, defendant cannot, for that reason,
8  withdraw defendant's guilty pleas, and defendant will remain bound to
9  fulfill all defendant's obligations under this agreement.  Defendant
10  understands that no one -- not the prosecutor, defendant's attorney,
11  or the Court -- can make a binding prediction or promise regarding
12  the sentence defendant will receive, except that it will be within
13  the statutory maximum.

14                    NO ADDITIONAL AGREEMENTS

15      47.  Defendant understands that, except as set forth herein,
16  there are no promises, understandings, or agreements between the USAO
17  and defendant or defendant's attorney, and that no additional
18  promise, understanding, or agreement may be entered into unless in a
19  writing signed by all parties or on the record in court.
20  ///
21  ///
22  ///
23
24
25
26
27
28

22

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        48.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    EILEEN M. DECKER
     United States Attorney
9

10   _____        ____8__|_31__|_16____
     PATRICK R. FITZGERALD                   Date
11   First Assistant U.S. Attorney

12   _____        ____8/30/2016_____
     PAUL ANTHONY CIANCIA                    Date
13   Defendant

14                                            8/3.|1c
     _____        Date
15   RICHARD G. NOVAK
     Law Offices of Richard G. Novak
     HILARY POTASHNER
16   Federal Public Defender
     EMILY J.M. GROENDYKE
17   JOHN LITTRELL
     GARY ROWE
18   Deputy Federal Public Defenders

19   Attorneys for Defendant PAUL
     ANTHONY CIANCIA

20

21

22

23

24

25

26

27

28

                                23

1

### CERTIFICATION OF DEFENDANT

2    I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorneys.   I

5 understand the terms of this agreement, and I voluntarily agree to

6 those terms.  I have discussed the evidence with my attorneys, and my

7 attorneys have advised me of my rights, of possible pretrial motions

8 that might be filed, of possible defenses that might be asserted

9 either prior to or at trial, of the sentencing factors set forth in

10 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

11 and of the consequences of entering into this agreement.  No

12 promises, inducements, or representations of any kind have been made

13 to me other than those contained in this agreement.  No one has

14 threatened or forced me in any way to enter into this agreement.  I

15 am satisfied with the representation of my attorney in this matter,

16 and I am pleading guilty because I am guilty of the charges and wish

17 to take advantage of the promises set forth in this agreement, and

18 not for any other reason.

19

20 *Paul Ciancia*                          8/30/2016
   PAUL ANTHONY CIANCIA                 Date
21 Defendant

22

23

24

25

26

27

28

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am one of defendant PAUL ANTHONY CIANCIA's attorneys.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; my client has understood all the issues related to his guilty plea and sentencing and has been able to assist in his defense; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          _8_/_30_/_16_____
RICHARD G. NOVAK                          Date
Law Offices of Richard G. Novak
HILARY POTASHNER
Federal Public Defender
EMILY J.M. GROENDYKE
JOHN LITTRELL
GARY ROWE
Deputy Federal Public Defenders

Attorneys for Defendant PAUL
ANTHONY CIANCIA

1                        **FACTUAL BASIS APPENDIX**

2   **A.    Preparation for the Attack, Murder, and Attempted Murders**

3        On March 8, 2013, defendant purchased a Smith & Wesson 5.56

4   millimeter M&P15 semiautomatic rifle.  On April 8, 2013, defendant

5   purchased 500 rounds of ammunition for his rifle.  On May 20, 2013,

6   defendant purchased ten magazines for his rifle.

7        Prior to approximately 8:00 a.m., on November 1, 2013, defendant

8   modified two pieces of his luggage by cutting matching rectangular

9   holes in the top of one piece of luggage and the bottom of the other

10  piece of luggage so that his rifle could fit inside the luggage.

11  Defendant zip-tied the two pieces of luggage together.

12       Additionally, prior to approximately 8:00 a.m., on November 1,

13  2013, defendant handwrote and signed a note, which was later found in

14  defendant's luggage.  The note reads:

15            Young or old, male or female,
              white/black/asian/latino, handicapped or able - I
16            do not discriminate.  If you made the conscious
              decision to put on a TSA costume and violate
17            peoples' rights this morning, I made the
              conscious decision to try to kill you this
18            morning.  If I managed to take just one TSA
              shithead with me, my mission was accomplished.
19            If I take two or more pigs' lives before you kill
              me, I'll be thrilled.  From now on, you will
20            think twice about violating our constitutional
              rights in exchange for a worthless fiat currency
21            paycheck. I want to instill fear in your
              traitorous minds.  I want it to always be in the
22            back of your head just how easy it is to take a
              weapon to the beginning of your nazi checkpoints.
23            If you want to play that game where you pretend
              that every American is a terrorist, you're going
24            to learn what a self-fulfilling prophecy is.  I
              also want it to be known that I tried very hard
25            to preserve all innocent lives during this
              mission (anyone who doesn't support the NWO).
26

27

28

                                1

                              Defendant's Initials  _PC_

1    Fuck the New World Order.  <u>Give us our money</u>
     <u>back.</u>

2
3                                    [signed]
                                     Paul Ciancia
4                                    Pissed-off Patriot

5    This message has been approved by Janet Fat Cunt
     Bulldyke Napolitano

6        The second page of the note bears a neon orange Transportation

7    Security Administration ("TSA") sticker of the variety that TSA uses

8    to indicate that a piece of luggage has been hand-screened.  An

9    identical TSA sticker (bearing the words "Certified / U.S. Department

10   of Homeland Security / TSA") was found on the stock of the rifle

11   defendant used to commit the crime.  TSA uses these particular

12   stickers only at certain airports — including Philadelphia

13   International Airport, through which defendant flew numerous times,

14   most recently during the summer of 2013.

15       On November 1, 2013, at approximately 7:30 a.m., defendant woke

16   one of his roommates and asked the roommate to drive him to Los

17   Angeles International Airport, an airport serving international civil

18   aviation ("LAX"), so that he could visit his family in New Jersey.

19   The roommate agreed.  While en route to LAX, defendant sent the

20   following text messages:

21       To his brother:

22           Taylor-I finally understand why I was brought
             into this world.  I was given countless hints.  I
23           used to think I was smart, I thought I had it all
             figured out a while ago.  I thought I saw the big
24           picture, but it took me a long time to put the
             final pieces of the puzzle together and now I can
25           see the biggest picture of all.  Its not a
             coincidence that I had sleep paralysis and had
26           that conversation with you 2 weeks before I would
             be completely broke and homeless.  My whole life
27           has been leading up to this.  All of my life was

28

                                    2

                        Defendant's Initials  <u>PC</u>

just training for this day.  In fact it was a very rigorous training course to make me strong enough for this job, so I wouldn't hesitate in the moment of truth.  I'm so sorry that I have to leave you pre-maturely, but it is for the greater good of humanity.  This was the purpose I was brought here.  I wont fail.  Oh and Im not doing this because I felt overwhelmed yesterday.  I was overwhelmed yesterday because I knew what today held for me.  I love you and the family-Paul

To his sister:

If the american people ever allow private banks to control the issue of their currency, first by inflation, then by deflation, the banks and corporations that will grow up around them will deprive the people of all property until their children wake up homeless on the continent their Fathers conquered."—Thomas Jefferson.  Jenna and Nick, I'm so sorry that I have to leave you pre-maturely, but someone has got to stand up to these tyrants.  I dont want your kids to grow up in a totalitarian state.  Physical slavery requires the masters to provide food and shelter for their slaves.  Economic slavery requires slaves to feed and shelter themselves.  I am no longer able to do either.  Im starving and desparate, but I want to work.  Please dont let the story be skewed.  There wasnt a terrorist attack on Nov 1.  There was a pissed off patriot trying to water the tree of liberty.  I know a text message is the shittiest way to say goodbye.  I couldnt let someone talk me out of this.  Love, Paul.

B.    **The Airport Attack, Murder, and Attempted Murders**

On Friday, November 1, 2013, at approximately 9:15 a.m., in Los Angeles, California, within the Central District of California, defendant entered LAX's Terminal Three.  Defendant removed his loaded rifle from his modified luggage and took aim at TSA Officer Gerardo Hernandez, a federal officer who was standing at a podium, pursuant to TSA's Pre-Check program, checking passengers' travel documents.  At the time defendant approached Officer Hernandez, Officer Hernandez

3

Defendant's Initials  PC

1  was engaged in the performance of his official duties.  Defendant

2  knowingly, deliberately, and intentionally discharged several rounds

3  at TSA Officer Hernandez, who fell to the floor when the rounds

4  struck his body.  Defendant then proceeded up the upward escalator

5  toward TSA's security checkpoint.  Partway up, defendant looked

6  downward at TSA Officer Hernandez, whose body moved.  Defendant

7  turned and walked purposefully down the upward escalator and

8  knowingly, deliberately, and intentionally discharged more rounds at

9  Officer Hernandez at point-blank range.  In total, defendant shot

10  Officer Hernandez twelve times, killing him.

11     Thereafter, defendant proceeded back up the upward escalator to

12  the TSA checkpoint, where TSA processes all outbound passengers for

13  weapons, explosives, and other prohibited items, and exchanged his

14  partially spent large capacity magazine for a fresh one in this area.

15  While many TSA officers and passengers had already fled, two

16  uniformed federal TSA Officers, Tony Leroy Grigsby and James Maurice

17  Speer, were still assisting a passenger just beyond the TSA

18  checkpoint.  Officer Grigsby was working the Terminal Three

19  checkpoint as a Behavior Detection Officer, as part of his official

20  TSA duties.  Officer Speer was working Terminal Three as a Master

21  Security Transportation Instructor, conducting observation exercises,

22  as part of his official TSA duties.

23     As Officers Grigsby and Speer and the passenger fled from the

24  TSA checkpoint and down the hallway toward the gate area, defendant

25  deliberately, knowingly, and intentionally discharged his rifle and

26  shot Officer Grigsby in his right ankle; shot Officer Speer in his

27  left shoulder; and shot a civilian, Brian Ludmer, in his right calf,

28

Defendant's Initials  PC

1  shattering his tibia and fibula.  These wounded victims ran or

2  crawled to hiding spots in the terminal.  Officer Grigsby, Officer

3  Speer, and Brian Ludmer all required surgeries to repair their

4  sustained serious bodily injuries.

5       Other passengers hiding in or fleeing from the terminal reported

6  that defendant asked them whether they were TSA, and when they said

7  no, he passed them by.

8       Law enforcement secured defendant at about 9:25 a.m.; the Smith

9  & Wesson M&P15 rifle was seized from defendant's immediate vicinity.

10 The rile contained one round in the chamber and a magazine with 26

11 rounds.  Agents also recovered five magazines containing 29 rounds

12 each from defendant's person.  Another magazine, containing eleven

13 rounds, was recovered from the TSA checkpoint.  Defendant's luggage,

14 recovered from the TSA pre-screen checkpoint, contained an additional

15 12 boxes of sealed ammunition, each with 20 cartridges, and two

16 additional magazines.  In all, defendant brought 500 rounds of .223

17 caliber ammunition, which is compatible with his Smith & Wesson

18 rifle, to LAX.

19

20

21

22

23

24

25

26

27

28

Defendant's Initials  PC